IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,635

STATE OF KANSAS,
*Appellee*,

v.

KRISTOFER J. WRIGHT,
*Appellant*.

SYLLABUS BY THE COURT

1.

On the facts of this case, the denial of defendant's right to be present when a continuance was requested by defense counsel against the defendant's wishes was not reversible error. Nor was any error arising from his counsel's later inability to argue in favor of the defendant's pro se motion to dismiss for violation of the speedy trial statute or any error from the prosecution's failure to bring the defendant to trial within 90 days of arraignment reversible.

2.

Listing of legally correct factors supporting an inference of premeditation in a jury instruction on premeditation is not error.

3.

A prosecutor's misstatement of law during a jury instructions conference does not require reversal of a defendant's convictions when the record does not demonstrate that

1

the misstatement influenced the judge and when the instruction language advocated for by the prosecutor correctly states the law.

4.

A "constitutional nullity" argument raised for the first time on appeal need not be considered on its merits.

5.

Under K.S.A. 2016 Supp. 21-5202(h), a criminal defendant's intent is subject to proof by circumstantial evidence. Specifically, a defendant need not testify to be convicted.

Appeal from Sedgwick District Court; JAMES R. FLEETWOOD and JOSEPH BRIBIESCA, judges. Opinion filed February 16, 2018. Affirmed.

*Krystle Dalke*, of Law Office of Michael P. Whalen, of Wichita, argued the cause, and *Michael P. Whalen*, of the same firm, was with her on the briefs for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: This is defendant Kristofer J. Wright's direct appeal from his conviction for first-degree premeditated murder and conspiracy to commit murder. We previously issued a decision remanding the case for an evidentiary hearing in district court to establish a record on whether a violation of Wright's right to be present at a continuance

hearing caused reversible harm. *State v. Wright*, 305 Kan. 1176, 390 P.3d 899 (2017). The hearing has now been conducted; we retained appellate jurisdiction.

Having evaluated the results of the hearing on remand, we hold that there was no reversible error resulting from the violation of Wright's right to be present, from any related allegation of error based on his lawyer's later failure to argue in favor of dismissal for violation of the speedy trial statute, or from the prosecution's failure to bring Wright to trial within 90 days of his arraignment.

We also have reviewed Wright's remaining appellate challenges to his convictions, one of which deals with the content of the jury instruction on premeditation, one of which addresses the prosecutor's erroneous statement about that content during the instructions conference with the district judge, and one of which challenges the content of the instruction on intent. None of these challenges requires reversal.

FACTUAL AND PROCEDURAL BACKGROUND

The facts of Wright's crimes are irrelevant to his purely legal arguments and thus will not be recited here.

Our earlier decision recited the procedural history necessary to an understanding of Wright's appellate claim that his right to be present at all critical stages of the prosecution against him had been violated. Of course, our remand continued the development of the procedural history on that claim, and the following further recitation provides necessary context for our ultimate disposition.

Immediately after issuance of our earlier decision, the State filed a motion for rehearing or modification. Before that motion could be ruled upon, Judge Warren M.

Wilbert, the district judge who had presided over the docket call at which Wright's counsel, Timothy A. Frieden, successfully sought the continuance Wright did not want, telephoned and sent a letter to this court, attempting to explain what was likely to have occurred when the continuance was granted. The court filed Judge Wilbert's letter with the Clerk of the Appellate Courts, and the parties were notified of Judge Wilbert's efforts to contact the court.

Wright's appellate lawyer then filed a motion seeking to have a district judge other than Judge Wilbert assigned on remand.

By order dated May 26, 2017, this court denied the State's motion for rehearing or modification and granted Wright's motion to have a different judge assigned to conduct the evidentiary hearing on remand. This court's order also gave further, more explicit instructions for the hearing and its aftermath, stating:

> "We emphasize that the issue before this court is whether Wright's presence would have made any difference in the decision to grant the continuance. In order to arrive at findings on this question, the district judge assigned by Chief Judge [James] Fleetwood must give both Wright and his lawyer on the one hand and the State on the other hand an opportunity for an on-the-record, evidentiary hearing.

> "After that hearing is held, the district judge must produce a journal entry containing his or her factual findings. That journal entry must be added to the appellate record before us in this case. Neither a telephone call nor a letter to any member of the court or to the appellate clerk will be sufficient for the judge to discharge his or her duty under this order or under our [earlier] opinion.

> "A transcript of any hearing held on the issue also must be produced and added to the appellate record.

4

"When both the journal entry and the transcript of any hearing have been added to the appellate record, counsel for Wright and for the State shall file a joint notice with the appellate clerk that the case is ready for further appellate review by this court. No further briefing or oral argument will be permitted."

On October 5, 2017, the parties filed the required joint notice. Chief Judge Fleetwood had assigned himself to conduct the evidentiary hearing, which was held on August 8, 2017. Wright, Frieden, two prosecutors, and Judge Wilbert testified at the hearing.

As of the time of the August 19, 2013, grant of the continuance for which Wright was not present, the State still had 35 of its 90 statutory days to bring the defendant to trial. Instead, trial did not commence until the following February—after intervening, unchallenged events further delayed it beyond its second setting of October 21, 2013.

The witnesses at the evidentiary hearing mentioned five possibilities for what would have occurred on the day Frieden obtained the continuance had Wright been present to voice his objection:

1.  A less-than-35-day continuance would have been granted and charged to the State, and the case would have been brought to trial within the statutory 90 days.

2.  Wright would have been persuaded to acquiesce in the continuance sought by Frieden, meaning the continuance would have been correctly charged to the defense.

5

3.      The continuance would have been granted and charged to the defense despite Wright's objections, because his expectation that his counsel would be ready for trial so quickly in a murder case was unrealistic.

4.      Judge Wilbert would have ordered a 30-day continuance under K.S.A. 2013 Supp. 22-3402(e)(4) based on the court's crowded docket, and the case would have been brought to trial within 90 days.

5.      The State would have been granted a 90-day material evidence continuance under K.S.A. 2013 Supp. 22-3402(e)(3), which would have avoided speedy trial concerns.

Judge Fleetwood made a factual finding that Judge Wilbert was aware of the five possibilities, regardless of the more limited information that Judge Wilbert's letter to this court had conveyed. Judge Fleetwood also found that Option 1, the scenario the prosecutors had described as most likely, would have occurred if Wright had been present and objecting. The trial would have been continued, because local procedures for alerting the court to the need for a judge to try the case *that day* had not been followed, and no judge was available to try it. The defendant had no statutory right to trial *that day*. The State would have been required to take a continuance charged to it, and prosecutors and the court would have ensured that the defendant's trial began within the next 35 days, i.e., before expiration of the statutory time limit of 90 days. If, by the time of the next trial setting, the prosecutors continued to believe that certain cell phone and tower records were important for the State's case, and they had not received them, they would have been free to seek a material evidence continuance of up to an additional 90 days. Because the records ultimately were obtained well within what would have been that additional 90 days, the State could have met its speedy trial obligation.

6

As mentioned, Wright advances two other appellate challenges related to his claim that the violation of his right to be present caused his statutory right to speedy trial to be violated, a right he cannot vindicate effectively on appeal. See *State v. Brownlee*, 302 Kan. 491, 511, 354 P.3d 525 (2015) (interpreting K.S.A. 22-3402; even if continuance originally attributed to defense is attributed to State on appeal, appellate remedy very limited).

First, Wright alleges that he was denied conflict-free counsel when Frieden did not argue Wright's pro se motion to dismiss based on the speedy trial statute.

The record before us demonstrates that Wright filed a pro se motion to dismiss on October 10, 2013—52 days after Frieden sought and obtained a continuance on August 19, i.e., 17 days after the expiration of 90 days from Wright's arraignment. Wright argued that his right to be present had been violated and that attribution of the continuance to him without his agreement violated his statutory right to a speedy trial.

On October 21, 2013, the date of the second trial setting resulting from the continuance Frieden had obtained, Wright was with Frieden in court before Judge Wilbert when the substance of the pro se motion was discussed. Frieden informed the judge that he had wanted the August continuance and had thought Wright was "on board" with that plan but that Wright had objected. Judge Wilbert noted that there had been only one continuance. One of the prosecutors, Jennifer Amyx, informed the judge that new discovery had just been sent to Frieden.

Judge Wilbert asked Wright if he would give Frieden more time to prepare for trial, given the seriousness of the charges. Wright said no. Wilbert then told Wright that he would be forcing Frieden to go to trial unprepared—"biting off your nose to spite your face"—and said that a continuance on a first-degree murder case was not unusual. The

7

judge declined to dismiss and again continued the case, this time attributing the continuance to the State.

On November 8, 2013, Wright again was in court with Frieden when Judge Joseph Bribiesca considered Wright's pro se motion. Frieden told Judge Bribiesca that he did not believe he could argue the motion. The judge agreed:

"Wright is, in essence, taking the position that there were continuances taken by the defense that he didn't authorize. . . . And so that . . . places you, Mr. Frieden, in a rather compromising position of, on the one hand, you're his attorney, you represent him, and on the other hand, . . . [Wright] is taking the position that he didn't authorize you to request continuances on his behalf, so I don't see how you can argue the motion either."

The judge then told Wright to tell him "what it is [Wright wanted] to tell" him. Wright explained that he had told Frieden he did not want any continuances and that he wanted to be present at all critical stages of the proceedings. Wright said that Frieden told him "that he wanted to take a vacation on my trial" but Wright was firm that he wanted no continuances. Wright was unsure how a continuance was credited to him and why he had not been present to object when it was sought.

When Judge Bribiesca heard from the State, Amyx referred him to letters Wright had written to Frieden before August 19, in which Wright asserted his right to be present and said he wanted no continuances. But Amyx pointed out that the letters also sought further investigation of the case less than two weeks before the first trial setting. She stated that a single continuance on a first-degree murder case was reasonable and that dismissal would be inappropriate. She also stated that no prosecutor had been present on August 19 either; had one been present, the State

8

"would have made a record under the statute . . . that there was material evidence which was unavailable, that reasonable efforts had been made to procure the evidence, and there was grounds to believe that it would have been procured within the next 90 days and the trial could be commenced within that time."

Judge Bribiesca noted that Wright, despite his insistence on speed, had also requested further investigation and had wanted Frieden to file a motion to sever his case from that of a codefendant. The judge continued:

"[Wright's] asking his lawyer to do all these things, and his lawyer can't do all these things on his behalf in a matter of 24 hours. It takes time to gather up all this information. It takes time to file motions and have 'em heard. It takes time to review any records that are obtained by way of either discovery or through an attorney's own investigation, with the help of an investigator or doing it himself.

. . . .

"The defendant cannot be heard now to scream that his speedy trial right has been violated as a result of him making demands on his lawyer to obtain information and file motions on his behalf, but it wasn't done fast enough to satisfy him."

Wright was again permitted to comment. He reiterated that he had told Frieden that he did not want any continuances charged to him, but he acknowledged that he had also requested further investigation by Frieden.

Judge Bribiesca ruled that the speedy trial statute required only that Frieden consult with Wright on continuances, not that Wright approve them, and that Wright had "caused the continuance that took place on [August 19] because [he asked] his lawyer to do all these things." He therefore denied the pro se motion to dismiss.

9

Wright also argues on appeal that the State's failure to bring him to trial within 90 days, despite being on notice of his assertion of his statutory right to speedy trial, was reversible prosecutorial error.

One of Wright's three remaining appellate issues centers on the wording of the premeditation jury instruction and the way in which one of the prosecutors advocated for that wording.

As mentioned in our previous decision, Frieden eventually withdrew as Wright's counsel and was replaced by Steven Mank, who represented Wright through trial and posttrial proceedings in the district court. Mank objected during conference with the trial judge to the State's proposed premeditation instruction. The proposed instruction listed factors a jury may consider in inferring the existence of premeditation. It read:

"Premeditation cannot be inferred from the use of a deadly weapon alone, but it may be inferred where other circumstances also exist. The circumstances which may give rise to an inference of premeditation include but are not limited to:

1.    The nature of the weapon used,

2.    A lack of provocation,

3.    The defendant's conduct before and after the killing,

4.    Threats and/or declarations made by the defendant before and after the killing, and

5.    Lethal blows inflicted after the deceased was felled and rendered helpless."

Mank conceded that the instruction correctly stated the law but argued that the listing of the factors was more appropriate for closing argument and that the factors in the instruction would "[draw] too much attention" to them. Prosecutor Robert Short responded:

> "Judge, our response is two-fold. One, this is wording directly taken from case law in the state of Kansas. In fact, in the case law it references this instruction being used in a closing where it was not part of the instructions. The better practice, according to that case, was to include it in the instructions, and so we have taken it word for word, proposed it to the Court to include in the instruction."

The trial judge overruled Mank's objection: "[T]here's a number of cases where the . . . appellate courts have cited this language with apparent approval. And therefore, the Court doesn't see a problem with giving this instruction to the jury."

Wright's final appellate argument focuses on the language of the jury instruction on intent. His counsel did not challenge the language at trial. The instruction read: "A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the State."

RIGHT TO BE PRESENT AND RELATED CHALLENGES

We have already ruled that Wright's right to be present at all critical stages of his prosecution was violated when he was absent from the August 19 proceeding in which Frieden successfully requested the continuance. *Wright*, 305 Kan. at 1178. The question remaining before us is whether that error was harmless. Would that continuance or some other continuance that avoided a speedy trial violation have been granted anyway, even if Wright was present and objecting?

The transcript of the evidentiary hearing and Chief Judge Fleetwood's findings on remand now enable us to answer that question.

Four of the five options discussed by the witnesses at the evidentiary hearing on remand have debilitating weaknesses.

Option 2's concept that Wright could have been persuaded to acquiesce in the continuance is simply not supported by substantial competent evidence in the record. As discussed in our earlier decision and more extensively above, Wright was dogged in asserting his right to speedy trial. He insisted well in advance of August 19 that he wanted no continuances and consistently repeated that assertion throughout the original proceedings in the district court, before this court, and on remand. He was not cowed by the skepticism he faced from Judge Wilbert or from Judge Bribiesca; without Frieden's meaningful assistance, he advocated powerfully for his position on the pro se motion to dismiss. We have no reason, other than Judge Wilbert's belief he could have been persuasive, to think Wright would have behaved differently had he been present on August 19.

Option 3—granting of the continuance and attribution of it to the defense despite Wright's objections, because his expectation that his counsel would be ready for trial so quickly in a murder case was unrealistic—does not appear to be supported by law. A defendant's right to speedy trial is not defense counsel's to waive without his or her client's agreement. Automatically allowing counsel to waive without that agreement could render any statutory or constitutional protection of the defendant's right to speedy trial practically worthless in any case in which a serious crime has been charged. In addition, we note that the testimony at the remand hearing about this option was unclear as to how long a continuance might have been granted, meaning we cannot know if it

truly would have mitigated the violation of speedy trial harm threatened to result from violation of Wright's right to be present on August 19.

As to Option 4, granting of a court continuance, the testimony from Judge Wilbert was unequivocal and emphatic; Wright's case was not going to go to trial on August 19, the date of the first trial setting. But generally a court continuance is designed as a fail-safe when a case cannot be brought to trial within the statutory time limit; both Judge Wilbert and the prosecutors testified that this case could have been prioritized and brought to trial within the permitted 90 days. A court continuance 35 days before expiration of the 90-day limit in this case would not have been appropriate.

On Option 5, a 90-day material evidence continuance granted to the State, again, there is an evidentiary infirmity. The prosecutors' testimony was internally inconsistent—on the one hand, asserting that the State's case was already very strong and ready to go by the time the continuance was granted and certainly could have been tried within 90 days and, on the other hand, stating that certain cell phone and tower records were still needed to rule out the existence of exculpatory information or corroborate the State's witnesses.

All of this being said, it is apparent from Chief Judge Fleetwood's findings that he recognized the factual and legal weaknesses in Options 2 through 5 listed by the witnesses. He sifted the wheat from the chaff, identifying the first option as the one supported by the facts and the law and the one most likely to have occurred had Wright been permitted to be present at the time his counsel sought the August continuance. That option—granting a less-than-35-day continuance and charging it to the State—would have been the sensible course. And it would have brought the case to trial within the 90 days permitted by the speedy trial statute. Wright was not, as Chief Judge Fleetwood recognized, entitled to trial *on August 19*. He was entitled to trial within 90 days and he would have gotten it. His presence on August 19 would not have prevented a continuance

from being granted. It merely would have shortened the length of the continuance and pushed the court and the State to meet the 90-day deadline. There is no evidence or argument that the State's case would have been meaningfully weakened by the accelerated schedule, and there is no evidence or argument that Wright's case would have been strengthened. Under such circumstances, we cannot say that Wright's absence when the defense continuance was granted on August 19 resulted in reversible harm.

This outcome also dooms Wright's appellate claims that he is entitled to reversal of his convictions because he was denied conflict-free counsel to argue his pro se motion to dismiss and because violation of his statutory right to speedy trial stemmed from prosecutorial error. We need not decide the predicate issue of whether there was error on either of these bases; we can assume it for purposes of argument. But any such error, if it existed, was as harmless as the error that underlay these claims, the denial of Wright's right to be present on August 19. Regardless, Wright would have gone to trial and he would have been convicted. He might have arrived at that result by a slightly different route, but his ultimate destination was bound to be the same.

CONTENT OF PREMEDITATION INSTRUCTION

Wright's fourth issue on appeal deals with the content of the premeditation instruction.

Wright asserts that the trial judge erred by including language from our caselaw regarding factors that may be considered by a jury when drawing an inference on the existence of premeditation. This appellate issue was fully preserved for appeal through Mank's objection at trial.

Our decision on the merits of this claim is controlled by our recent decision in *State v. Bernhardt*, 304 Kan. 460, 472, 372 P.3d 1161 (2016). As Mank conceded, the language is a correct statement of the law. It was not error for the trial judge to include it in the premeditation instruction.

## PROSECUTORIAL ERROR IN INSTRUCTIONS CONFERENCE

Wright's fifth issue on appeal challenges one of the prosecutor's statements during the jury instructions conference with the trial judge. When defense counsel Mank objected to inclusion of the list of factors in the premeditation instruction discussed above, the prosecutor stated that prior caselaw indicated it was "better practice" for judges to include the factors in the premeditation instruction.

In fact, no such caselaw exists, and the prosecutor's statement to the contrary was legally erroneous.

Nevertheless, Wright's appellate issue has at least two fatal weaknesses. First, there is nothing in the record that demonstrates that the prosecutor's erroneous statement was solely responsible for the judge's decision to include the factors in the instruction. And, second, as discussed in response to the preceding issue, inclusion of the factors was not erroneous.

## CONTENT OF INTENT INSTRUCTION

Wright's final complaint on appeal was not preserved at trial. He now insists that the district court's jury instruction on intent was "ineptly drawn, unconstitutional and prevented the State from meeting its burden of proof," and he invokes preservation exceptions for newly asserted claims involving only a question of law arising on proved

or admitted facts and determinative of the case and for those whose consideration is necessary to serve the ends of justice or prevent the denial of fundamental rights. See *State v. Reed*, 306 Kan. 899, 902, 399 P.3d 865 (2017) (listing three exceptions that allow issue to be raised for first time on appeal).

We are not fully persuaded that Wright's amorphous claim is a good candidate for a jurisprudential exception to the requirement of preservation for appellate review. Wright argues in his brief that the instruction, modeled on K.S.A. 2016 Supp. 21-5202(h), cannot be legally correct:

> "In short, absent a statement from a defendant as to what he did and what his desired outcome was, the State can't prove anything to be intentional. The plain language states that intent is based completely on the desire or conscious objective of the defendant. And no guidance is given as to what this means or how it can ever be proved by the [S]tate. In short, the language is a constitutional nullity."

Even if we were to accept Wright's invitation to a more fulsome discussion of this issue, we would rule against him, disposing of it in the same manner that we disposed of similar claims raised by the same appellate counsel on behalf of a different client in *State v. Thach*, 305 Kan. 72, 378 P.3d 522 (2016).

In *Thach*, we declined to specifically address the "constitutional nullity" aspect of the defendant's argument raised for the first time on appeal. We did, however, interpret K.S.A. 2016 Supp. 21-5202(h)—which provides that "[a] person acts 'intentionally,' or 'with intent,' with respect to the nature of such person's conduct or to a result of such person's conduct when it is such person's conscious objective or desire to engage in the conduct or cause the result"—to mean that "the State may use circumstantial evidence to prove a defendant's conscious objective or desire to engage in the conduct or cause the

16

result of a charged crime." *Thach*, 305 Kan. at 84. Specifically, a defendant need not testify to be convicted.

CONCLUSION

We reject all of defendant Kristofer J. Wright's arguments for reversal of his convictions for premeditated first-degree murder and conspiracy to commit murder and affirm the judgment of the district court.

\* \* \*

JOHNSON, J., concurring: I agree with the majority's determination that Wright's absence from the August 19 proceeding was a violation of his constitutional right to be present at all critical stages of his criminal prosecution. I also agree that Wright's presence at that hearing "would have shortened the length of the continuance and pushed the court and the State to meet the 90-day [speedy trial] deadline." Slip op. at 14. I part company with the majority when it finds that the constitutional violation was harmless because the record does not contain evidence that the State's case would have been weakened or that the defense would have been strengthened if the trial would have occurred within the 90-day statutory period.

First, the majority fails to explain why the absence of evidence in the record is being used against the party whose constitutional rights were violated. Where the State and the district court have violated a criminal defendant's rights by conducting a critical-stage hearing without the defendant's presence, our precedent suggests that the State should be charged with the burden to prove beyond a reasonable doubt that the constitutional violation was harmless. Cf. *State v. Ward*, 292 Kan. 541, 568-69, 256 P.3d 801 (2011) ("*Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705

17

(1967)] would require the party favored by the error—usually the State—to carry the burden of production." Benefitted party must prove beyond a reasonable doubt that the error did not affect outcome of trial, i.e., no reasonable possibility that error affected the verdict.). But in this instance, all the State proved was that the constitutional violation did, in fact, prejudice Wright. As Judge Fleetwood found, if Wright had been present, a continuance within the statutory speedy trial boundaries would have been granted, but it would have been charged to the State, not the defense. Consequently, without the constitutional error and corresponding attribution of the continuance to the defense, Wright would have received the statutory speedy trial date to which he was entitled and for which he had unequivocally advocated.

As noted, the majority finds harmlessness in its assessment that there is no evidence that the defense would have been impaired by the later trial date. But impairment of the defense is only one of the recognized interests that a speedy trial is designed to protect. The United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 532, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), identified three ways in which a defendant is prejudiced by a speedy trial violation, to-wit:

> "Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests:  (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."

Nevertheless, I feel compelled to concur in the result reached by the majority. We are not dealing with a constitutional speedy trial question. The constitutional violation in this case involved the defendant's right to be present at critical stages of the prosecution, the direct result of which was to deny Wright his *statutory* speedy trial rights. But, as the majority notes, those statutory rights were effectively eviscerated by this court's decision

18

in *State v. Brownlee*, 302 Kan. 491, 511, 354 P.3d 525 (2015). Based on the way that *Brownlee* interpreted the speedy trial statute, K.S.A. 22-3402, the incorrect assignment of the continuance to Wright would not have been an appealable matter, even if he had been present at the district court hearing. Accordingly, Wright cannot get relief here despite the constitutional violation. But it is not because he failed to establish that the relative strength of the State's case was affected.

LUCKERT, J., joins the foregoing concurring opinion.